UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JERALD ALAN HAMMANN,<br><br>Plaintiff,<br><br>v.<br><br>1-800 IDEAS.COM, INC., 1-800 SAN DIEGO INC., STEVEN PARKER, RICHARD JONES, DAVID SPROUSE, and 800-IDEAS, INC.,<br><br>Defendants. | Civil No. 03-3342 (PJS/RLE)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE DATED JULY 14, 2006 |

Jerald Alan Hammann, 3131 Excelsior Boulevard, Suite 912, Minneapolis, MN 55416, plaintiff *pro se*.

Christopher K. Sandberg, LOCKRIDGE GRINDAL NAUEN, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for defendants 1-800 Ideas.com, Inc., 1-800 San Diego Inc., Steven Parker, and Richard Jones.

David Sprouse, 2106 Emberwood Way, Escondido, CA 92029, defendant *pro se*.

David M. Johnson, THIBODEAU, JOHNSON & FERIANCEK, PLLP, 800 Lonsdale Building, 302 West Superior Street, Duluth, MN 55802, for defendant 800-Ideas, Inc.

This matter is before the Court on plaintiff Jerald Hammann's objections to the July 14, 2006 Report and Recommendation ("R&R") of Magistrate Judge Susan Richard Nelson. Hammann has sued several defendants under the Communications Act of 1934, 47 U.S.C. § 151 et seq., including 1-800 Ideas.com, Inc., 1-800 San Diego, Inc., 800-Ideas, Inc., Steven Parker, Richard Jones, and David Sprouse.  Hammann accuses the defendants of warehousing, hoarding, and brokering toll-free vanity telephone numbers — including two (1-800-CHOICETIME and 1-

-1-

888-CHOICETIME) that Hammann attempted to acquire for his start-up business (ChoiceTime) — in violation of regulations promulgated under the Communications Act.

Judge Nelson's R&R addresses four motions:  First, 1-800 Ideas.com, Inc., 1-800 San Diego, Inc., Parker, Jones, and Sprouse have moved to dismiss this lawsuit on the merits. Second, 800-Ideas, Inc. has moved to dismiss Hammann's claims against it for lack of personal jurisdiction.  Third, Hammann has moved for summary judgment against 1-800 Ideas.com, Inc., 1-800 San Diego, Inc., Parker, Jones, and Sprouse.  Finally, Hammann has moved for summary judgment against 800-Ideas, Inc.  The R&R recommends dismissing all claims against the three individual defendants (Parker, Jones, and Sprouse) on the merits, dismissing all claims against 800-Ideas, Inc. for lack of personal jurisdiction, and denying both of Hammann's summary judgment motions.

The Court has reviewed the record de novo, as is required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Based on that review, the Court overrules Hammann's objections and adopts Judge Nelson's R&R.  All of Hammann's arguments are adequately addressed by Judge Nelson.  The Court was given pause by only two issues.

First, Judge Nelson found that the individual defendants (Parker, Jones, and Sprouse) were entitled to summary judgment because "any conduct concerning the warehousing, hoarding, brokering, violation of lag time restrictions, or first come first served regulations by the individual defendants would have been as employees or agents of the companies and in furtherance of those companies' ends and not as individuals engaged as common carriers for hire."  R&R at 18.  By "companies," Judge Nelson was referring to 800-Ideas, Inc. and 1-800 Ideas.com.  Hammann objects, arguing that, during some of the relevant periods of time, 800-

Ideas, Inc. and 1-800 Ideas.com, Inc. were not in existence as corporations, and thus the individual defendants could not have been acting on behalf of anyone but themselves. Specifically, Hammann argues that:

> during significant periods relevant to the Plaintiff's Counts, the assets and actions or failures of action that the Magistrate Judge attributes to the corporate defendants actually took place when either 800 Ideas, Inc., or 1-800 Ideas.com, Inc., were not even a legally recognized business entity within the very state which granted their legal status.

Pl.'s Obj. 9, July 31, 2006 [Docket No. 200].

In support of his argument, Hammann cites two exhibits that he submitted on October 31, 2005, in support of his objections to a different order of Judge Nelson's, and then again on November 15, 2005, in support of his motion for summary judgment. Hammann Aff. Ex. 4, Oct. 31, 2005 [Docket No. 127]; Hammann Aff. Ex. 12 & 13, Nov. 15, 2005 [Docket No. 146]. These exhibits are print-outs from the website maintained by the Nevada Secretary of State. The print-outs report that the corporate status of 800-Ideas, Inc. was revoked in 1996 and reinstated in 1997 and that the corporate status of 1-800 Ideas.com, Inc. was revoked in 1996, reinstated in 1998, revoked again in 2000, and reinstated a second time in 2002. *Id.*

The Court was puzzled that Hammann's argument was not addressed by Judge Nelson in an R&R that is otherwise painstakingly thorough. On investigation, though, the reason for that omission became clear: Judge Nelson did not address Hammann's argument because Hammann did not make his argument before her. Indeed, in the three years since this case was filed, Hammann has never presented this argument to Judge Nelson. Hammann did argue that individuals can be held liable under the Communications Act if they personally engage in conduct that is prohibited by the Act, even if that conduct is done on behalf of a corporate

employer. *See* Pl.'s Supplemental Mem. 10-20, Feb. 10, 2006 [Docket No. 195]. Judge Nelson addressed this argument at length. *See* R&R at 16-19. Hammann did not, however, argue that Parker, Jones, and Sprouse could be held personally liable because, during certain periods of time, the corporate status of their employer had been revoked. References that Hammann made to the print-outs from the Nevada Secretary of State were merely to establish incorporation dates or identify corporate officers. *See, e.g.*, Pl.'s Obj. 5, Nov. 1, 2005 [Docket No. 121].

A party cannot, in his objections to an R&R, raise arguments that were not clearly presented to the magistrate judge. *See Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 1000 (8th Cir. 2004); *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000). In other words, "a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review." *Roberts*, 222 F.3d at 470. As the Eighth Circuit has repeatedly held, the "'purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court.'" *Id.* (quoting *Reciprocal Exch. v. Noland*, 542 F.2d 462, 464 (8th Cir. 1976)). For that reason, Hammann cannot now object to Judge Nelson's R&R on the grounds that the dismissal of Parker, Jones, and Sprouse is improper because 800-Ideas, Inc. and 1-800 Ideas.com, Inc. did not exist during some of the relevant periods of time.

The Court was also given pause by Judge Nelson's recommendation that Hammann's motion for summary judgment against 1-800 Ideas.com, Inc. and 1-800 San Diego, Inc. be denied. On first glance — even on second glance — the conduct engaged in by these companies with respect to toll-free numbers appears to be precisely the kind of conduct that the

Communications Act and the regulations promulgated under the Act were intended to prohibit. As the Court understands the facts, these companies secured hundreds of toll-free numbers that they did not use for any real purpose. Rather, the companies sat on the numbers, waiting for a prospective customer to call a number and inquire about the number's availability. Sandberg Aff. Ex. B at ¶ 13 [Docket No. 168]. The companies then offered to sell that prospective customer a marketing plan that just happened to include the ability to use the toll-free number. *Id.* at ¶ 16. This appears to the Court to be "warehousing," "hoarding," and "brokering" — in substance if not in name.

That said, the Court has decided to accept Judge Nelson's recommendation that Hammann's motion be denied. The Court is aware that it must review the record de novo, and it has done so. But this is a complicated case. Although Judge Nelson has worked on this case extensively over the past three years, the undersigned is new to the case, and takes the case on a cold record. The undersigned finds that, given that material facts appear to be disputed or at least unclear, it is prudent to accept Judge Nelson's recommendation that summary judgment be denied. The Court emphasizes, though, that denial of Hammann's summary judgment motion in no way precludes Hammann from moving for judgment as a matter of law at trial — even relatively early in the trial.

One final observation: The Court obviously believes that Hammann has a strong case on liability. But the Court cautions Hammann to be realistic about his prospects of recovering relief beyond a court order that he be allowed to use one or both of the toll-free numbers he seeks. It is not at all clear to the Court that Hammann will be entitled to recover *any* monetary relief, much less the huge sums that he seems to be contemplating.

Damages for lost profits, especially for a relatively new business venture, must be supported by specific, concrete evidence, not by mere "speculation and conjecture." *Mostly Media, Inc. v. U.S. West Communications*, 186 F.3d 864, 866 (8th Cir. 1999). In *Mostly Media*, a television programming company, Mostly Media, brought suit against U.S. West and various other distributors for excluding the company from an experimental service that provided interactive television programming. *Id.* at 865. At trial, Mostly Media called an economist to provide evidence of the company's damages; the economist relied heavily on the amount of revenue generated by another business that did participate in the experimental service. *Id.* at 866. The trial court found that the economist's testimony was so speculative that the damages claim would not even be submitted to the jury. *Id.* at 866-67. Specifically, the trial court concluded that there was insufficient evidence of damages and almost no proof "'that profits lost by the plaintiffs were the direct result of the conduct on the part of U.S. West or the [other] defendants.'" *Id.* at 866 (quoting Trial Tr. 1001). The Eighth Circuit affirmed, noting "[t]he burden of proof required of a plaintiff in a lost-profits case is admittedly heavy" and "the business plans developed by Mostly Media . . . were nothing more than optimistic projections for an enterprise that never got off the ground." *Id.* at 867.[1]

---

[1] Compounding Hammann's already "heavy" burden, regulations promulgated under the Communications Act require that claims for damages be alleged with a great deal of specificity. *See* 47 C.F.R. § 1.722(h)(1) (requiring, in either the initial complaint or a supplemental damages complaint, "[a] computation of each and every category of damages for which recovery is sought, along with an identification of all relevant documents and materials or such other evidence to be used by the complainant to determine the amount of such damages"); *see also AT & T Co. & MCI v. U S West*, 16 F.C.C.R. 14,813, at 14,816 (July 30, 2001) (holding that, to satisfy the damages requirement § 1.722, "complainants . . . bear the burden of proving the extent of their injury and the causal connection between their injury and the violation described").

Hammann's damages claim seems to be based on a belief that, had his business been able to use one toll-free number instead of another, the business would have been much more successful — millions of dollars more successful. This is inherently speculative, and the evidence submitted by Hammann only emphasizes the speculative nature of his damages claim. For example, Hammann's expert estimates that the alleged violations of the Communication Act cost Hammann anywhere from $3.6 to $24 million in lost profits, lost opportunities, and unreturned investment costs. Hammann Aff. Ex. 29 at ¶¶ 4, 34, Nov. 15, 2005. The fact that the range of estimated damages is so huge — a factor of almost seven — is, in and of itself, evidence of how much speculation was involved in arriving at the estimate.

More importantly, the estimate of Hammann's expert is based to a substantial extent on a comparison of Hammann's business (ChoiceTime) with OpenTable, which is apparently the most successful online restaurant reservation service in America. *Id.* at ¶ 21. (ChoiceTime also aspires to be an online restaurant reservation service.) The report admits, though, that OpenTable does not "advertise[] a vanity toll-free number to make reservations." *Id.* at ¶ 14. Thus the report provides no reason at all for believing that being able to use a different toll-free number would have turned ChoiceTime into OpenTable. Moreover, the report does not explain why OpenTable is the appropriate benchmark, as opposed to the thousands of start-up businesses that failed despite having access to a memorable vanity number.

The Court will maintain an open mind and consider all of the evidence that Hammann wishes to present on this point. But the Court warns Hammann that he has a "heavy burden" in trying to prove that, had he only acquired the toll-free numbers 1-800-CHOICETIME and 1-888-CHOICETIME, his business would have become as successful as OpenTable.com — much less

as successful as Priceline, Travelocity, and Expedia, three other companies cited by Hammann's expert. Those three giants of the Internet are renown in large part because they beat long odds and enjoyed success that eluded thousands upon thousands of similar companies. It is one thing to say that the business of a start-up computer company could have been enhanced if the business had been able to use the toll-free number 1-800-COMPUTER.[2] It is a different thing entirely to say that access to that number would have turned the start-up computer company into Microsoft.

The Court warns Hammann that, at this point, his case on damages appears to be as weak as his case on liability is strong. Just as nothing precludes Hammann from moving at trial for judgment as a matter of law on the issue of liability, nothing precludes the defendants from moving at trial for judgment as a matter of law on the issue of damages.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court overrules Hammann's objections [Docket No. 200] and adopts Judge Nelson's R&R [Docket No. 198]. Accordingly, IT IS HEREBY ORDERED:

1. The motion to dismiss 1-800 Ideas.com, Inc., 1-800 San Diego, Inc., Parker, Jones, and Sprouse [Docket No. 122] is GRANTED insofar as it seeks dismissal of all claims against

---

[2] The website "TollFreeAppraisals.com" reports that "1-800-COMPUTER, along with the domain name www.computer.com transferred hands recently for approximately $500,000." *See* http://www.tollfreeappraisals.com/sample_appraisal.htm. The Court has no idea if the report is true, but, if it is true, it puts into perspective the claim by Hammann's expert that 1-800-CHOICETIME was worth between $3.6 and $24 million to Hammann's young business.

Parker, Jones, and Sprouse, and DENIED in all other respects.  All claims against Parker, Jones, and Sprouse are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2.  800-Ideas, Inc.'s motion to dismiss [Docket No. 153] is GRANTED.  All claims against 800-Ideas, Inc. are DISMISSED FOR LACK OF PERSONAL JURISDICTION.

3.  Hammann's motion for summary judgment on his claims against 800-Ideas, Inc. [Docket No. 172] is DENIED as moot.

4.  Hammann's motion for summary judgment on his claims against 1-800 Ideas.com, Inc., 1-800 San Diego, Inc., Parker, Jones, and Sprouse [Docket No. 143] is DENIED.


Dated: September  7,  2006        s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge